World Wide v. Shinkong

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

—————————————

August Term, 2012

(Argued: January 18, 2012          Decided:   September 14, 2012)

Docket No. 10-3476

—————————————

WORLD WIDE POLYMERS, INC.,

*Plaintiff-Counter-Defendant-Appellant,*
          v.

SHINKONG SYNTHETIC FIBERS CORPORATION,

*Defendant-Counter-Claimant-Appellee*.

—————————————

Before: WALKER, LEVAL, and POOLER, *Circuit Judges*.

Appeal from orders of the United States District Court for the Southern District of New York (Loretta A. Preska, *C.J.*) striking plaintiff's expert report and claim for money damages after plaintiff attempted to file its expert disclosures seven weeks late, and later granting defendant summary judgment. Because we find plaintiff lacked (1) sufficient notice of such severe consequences for late filing; (2) an opportunity to respond before being sanctioned; and because we find the penalty far exceeded the transgression, we vacate and remand for further proceedings consistent with this opinion.

Vacated and remanded in part, affirmed in part.

—————————————

RICHARD DePALMA, Thompson Hine LLP (Joseph B. Koczko,

Jeanette Rodriguez-Morick, *on the brief*), New York, N.Y., *for Plaintiff-Counter-Defendant-Appellant World Wide Polymers, Inc.*

TODD R. GEREMIA, Jones Day (Victoria Dorfman, Julie A. Rosselot, *on the brief*), New York, N.Y., *for Defendant-Counter-Claimant-Appellee Shinkong Synthetic Fibers Corp.*

POOLER, *Circuit Judge*:

World Wide Polymers, Inc. ("WWP") sued Shinkong Synthetic Fibers Corp. in November 2003 seeking damages and injunctive relief arising out of the failure of a joint venture between the parties. After an initial flurry of activity, the case lay dormant for nearly three years before discovery resumed. The United States District Court for the Southern District of New York (Loretta A. Preska, *C.J.*) granted several requests to extend the discovery schedule, but in granting the last one expressly stated "[n]o further extensions will be granted." WWP proceeded to file its expert disclosure in support of its request for damages seven weeks late without first seeking an extension of time from the district court. Shinkong objected to the late filing and asked the district court to strike the expert report and WWP's claim for damages. The district court granted Shinkong's request. Because the district court acted without providing WWP with (1) sufficient notice of such severe consequences for late filing; and (2) an opportunity to respond before being sanctioned; and because we find the penalty imposed far outweighed the transgression, we vacate and remand for further proceedings consistent with this opinion.

## BACKGROUND

WWP is a New Jersey-based distributor of polyethylene terephthalate ("PET"), the plastic used for soft drink bottles. Shinkong is a Taiwan-based company that manufactures and supplies PET.

2

In May 1998, the parties entered into a customer protection agreement wherein Shinkong agreed to sell its product only through WWP to customers that WWP independently developed on Shinkong's behalf, subject to Shinkong approving those customers. To be approved by Shinkong, WWP was required to (1) provide Shinkong with the customer's name; (2) make a sale of Shinkong PET to the customer; (3) obtain the customer's approval of the use of Shinkong PET to make its plastic bottles (for example, Pepsi bottlers could only use Pepsi-approved PET to make bottles for Pepsi products); and (4) obtain Shinkong's approval. WWP alleges that it held up its end of the bargain, finding customers and obtaining the necessary product certification approvals, only to have Shinkong sell directly to the customers WWP lined up, cutting WWP out of the sales process. The relationship between the parties ended in late 2001.

WWP filed its complaint on November 7, 2003, alleging breach of contract, breach of fiduciary duty, tortious interference with business relations, and unfair and deceptive trade practices. WWP sought retrospective damages, punitive damages and injunctive relief. The original discovery schedule called for WWP to serve its expert witness report by February 28, 2005, with all expert discovery completed by April 29, 2005. Both deadlines went unmet. The docket indicates the matter went virtually dormant between September 2004 and May 2007 until revived by an inquiry from the district court. Discovery resumed, although the process was not without conflict. After an attempt to settle failed, the district court granted the parties' request for permission to extend discovery to February 28, 2009. In endorsing the schedule, the district court noted that "the February 28 discovery cut-off date will not be changed." The district court ordered a conference for January 14, 2009. However, WWP's counsel failed to appear, blaming his recent firm change. The district court re-scheduled the conference for January 20, 2009. In advance of the conference, Shinkong asked the court for permission to file a Rule 41(b) motion

to dismiss the action for failure to prosecute. The district court did not grant permission, and there is no indication in the record that the parties discussed the issue with the district court.

On February 19, 2009, WWP — with the consent of Shinkong — asked the district court to extend the discovery deadline to April 30, 2009, explaining:

> As Your Honor may recall, during the January 20 conference call, WWP raised the issue of needing a damages expert at trial. Your Honor observed that the damages testimony might be of such a nature that it could be put in at trial by WWP's principals, and the parties agreed. However, shortly thereafter, we realized that nearly all of the documents pertinent to a damages calculation have been designated "attorney's eyes only," and therefore may not be reviewed by WWP's principals under the Stipulated Protective Order in this case. Shinkong has consented to an adjournment of the discovery cut off to provide time for WWP to retain an expert and to make appropriate disclosures. WWP is currently working to engage an appropriate expert witness.

The district court granted the adjournment.

The day before the discovery cutoff expired, WWP —again with the consent of Shinkong —asked the district court to extend the close of discovery to August 21, 2009, with WWP's expert disclosures due on June 10, 2009. The district court granted the request, but warned "[n]o further extensions will be granted." WWP did not make its expert disclosures until July 29, 2009 - seven weeks after the June 10, 2009 deadline. On August 14, 2009, WWP wrote to the district court, explaining that it did not serve its expert report on time because "[t]he preparation and delivery of plaintiff's expert report took longer than anticipated." The letter, in the form of a status update to the district court, suggested deadlines for Shinkong's expert production, but noted the Shinkong had not responded to WWP's request for dates. Shinkong responded on August 20, 2009, with a letter reciting the litany of stops and starts in litigating the case, and ended by asking the court to sanction WWP by striking the late expert report and WWP's request for damages.

The next day — before WWP responded to Shinkong's demand for sanctions — the district court issued an order striking both WWP's expert report and request for damages. The district court stated, "[h]aving reviewed counsel's recent letters (attached), I now hold that 'no further extensions' means 'no further extensions' " WWP then moved for reconsideration. The district court, after full briefing, denied the motion:

> If the Court were to reconsider the August 24 order, it would be adhered to. "[D]iscovery orders are meant to be followed. A party who flouts such orders does so at its peril." *Bambu Sales v. Ozak Trading*, 58 F.3d 849, 854 (2d Cir. 1995) (internal quotation marks omitted). Here, the Court was simply enforcing its order of April 30, 2009 [dkt. no. 32] that "[n]o further extension will be granted." As noted in the August 24 order, "'no further extensions means no further extensions."

Shinkong then moved for summary judgment on WWP's request for a permanent injunction — its sole remaining claim for relief — and on Shinkong's counterclaim for breach of contract. The district court granted the motion dismissing WWP's request for injunctive relief because "the loss of customers and business resulting from the breach of an exclusive distributorship agreement is typically compensable in monetary damages." The district court also found that even if injunctive relief were available, it would enter summary judgment on the claim for injunctive relief based on the merits. It denied the motion with regard to Shinkong's counterclaim. The parties stipulated to the counterclaim's dismissal, without prejudice to renewal if WWP prevailed on appeal, and this appeal followed.

## ANALYSIS

### I.      Sanctions.

Federal Rule of Civil Procedure 37 governs the district court's procedures for enforcing discovery orders and imposing sanctions for misconduct.

5

Rule 37 provides in relevant part that:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
>
> (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> . . .
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Imposing sanctions pursuant to Rule 37 "is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988).

In "evaluating a district court's exercise of discretion" to impose Rule 37 sanctions, we consider a number of factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks omitted) (alteration in original). "Because the text of the rule requires only that the district court's orders be 'just,' however, and because the district court has 'wide discretion in imposing sanctions under Rule 37,' these factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion." *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (citation omitted).

The district court's choice of striking WWP's request for damages reflects a harsh

6

sanction, one akin to dismissing the action altogether. Accordingly, we apply the same standards as we would have if the district court dismissed the case instead. Dismissal "'is a drastic remedy that should be imposed only in extreme circumstances,' . . . usually after consideration of alternative, less drastic sanctions." *John B. Hull*, 845 F.2d at 1176 (quoting *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir. 1986)). Finally, "[i]n deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the [misconduct]." *Dodson v. Runyon*, 86 F.3d 37, 40 (2d Cir. 1996).

Bereft of findings of fact or legal analysis by the district court, we cannot find imposing the severe sanction of dismissing WWP's claim for damages was an appropriate exercise of the district court's discretion. Even assuming WWP acted willfully in submitting its expert report seven weeks late without first seeking the court's permission, the district court provided no analysis to support its conclusion that striking WWP's request for damages was the appropriate remedy for the infraction. First, there is no indication in the record that the district court considered any lesser sanctions. Second, while this case was prosecuted in fits and starts, with numerous requests for extensions along the way, the record indicates this was the first time WWP missed a deadline without first consulting with opposing counsel and jointly requesting an extension of time from the court.

Most critically, there is no indication in the record that WWP had any notice that a possible consequence of late filing could be striking its request for damages and no opportunity to argue its case before the court prior to such harsh action being taken against it. Parties must be given notice and an opportunity to respond before a cause of action, or potential remedy, is

7

dismissed as a sanction for failure to comply with court orders. *See, e.g.*, *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 1994) (dismissal appropriate where plaintiff's "sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders to appear for his deposition would result in the dismissal of his action*"); John B. Hull*, 845 F.2d at 1177 (upholding dismissal of complaint where district court issued two warnings that failure to obey discovery orders would result in dismissal).

While the district court did warn the parties that there would be "no further extensions," that is not sufficient to place a party on notice that its request for damages might be stricken. Furthermore, because the attorney's failure was one of sloppiness or negligence and did not seek an unfair advantage over the adversary in the litigation, the late filing of the report did not warrant so drastic a sanction of the plaintiff (as opposed to the lawyer). Thus, it was not a transgression warranting the striking of plaintiff's expert report, much less striking its claim for damages. *See Dodson*, 86 F.3d at 39. ("[t]he remedy of [of dismissal] is pungent, rarely used, and conclusive," and is employed only where the district court "is sure of the impotence of lesser sanctions.").

We understand the district court's frustration with the lackadaisical manner in which this case was litigated. However, the district court failed to provide any analysis as to why the first sanction meted out was one of the most severe sanctions possible, and the record before us presents no plausible explanation. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) ("With no findings or explanation from the district court, we cannot conclude that the sanction of dismissal of the complaint and granting of the counterclaims was appropriate."). When an attorney's misconduct or failing does not involve an attempt to place

8

the other side at an unfair disadvantage, any sanction should ordinarily be directed against the attorney rather than the party, absent strong justification. While we do not doubt that a sanction is appropriate, the facts before us suggest that sanctions should be imposed on the attorney, and not bar WWP from a full presentation of its case.

On remand, the district court is free to consider the issue of sanctions anew, so long as such sanctions are consistent with this opinion.

**II.    Summary judgment.**

WWP also appeals from the district court's grant of summary judgment to Shinkong on WWP's claim for a temporary and permanent injunction — the sole remaining claim after the district court struck the request for damages. As set forth in *eBay Inc. v. MercExchange, L.L.C.*:

> a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

547 U.S. 388, 391 (2006).

The district court correctly concluded WWP did not suffer irreparable harm. When the alleged harm is the loss of customers and business as a result of a breached agreement for an exclusive distributorship, that harm is compensable with money damages. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). There is no question that WWP's injuries are compensable with money damages. Further, as a practical matter, nine years have passed between the filing of the complaint and today. After the passage of so much time, an injunction cannot provide plaintiff any useful relief. The record makes clear that WWP was in no hurry to litigate this action — it never sought a preliminary injunction or an expedited

9

discovery schedule, nor did it take any action to move the case along quickly, as one might expect of a party allegedly suffering irreparable harm. There is simply no wrong here than an injunction can make right. We express no opinion on the remainder of the district court's analysis, and on remand the district court is free to revisit the issue of summary judgment anew.

## CONCLUSION

For the reasons given above, we (1) vacate the district court's decision to strike WWP's expert report and claim for damages; (2) affirm the grant of summary judgment on WWP's claim for injunctive relief; and (3) remand for further proceedings consistent with this opinion.