**Muhammed CHOWDHURY, Plaintiff,**

v.

**HAMZA EXPRESS FOOD CORP. and Almontazer Fadel, Defendants.**

No. 14–CV–150.

United States District Court, E.D. New York.

Signed June 5, 2015.

Filed June 9, 2015.

Michael S. Kimm, Thomas W. Park, Sung H. Jang, Kimm Law Firm, Englewood Cliffs, NJ, for Plaintiff.

Morris Fateha, Law Offices of Morris Fateha, P.C., Brooklyn, NY, for Defendants.

## ORDER

JACK B. WEINSTEIN, Senior District Judge.

The magistrate judge's report and recommendation, issued on February 26, 2015, is adopted. Today's hearing confirms the magistrate judge's findings and rulings of deliberate failure by defendants to keep and present appropriate records and other discovery pursuant to the magistrate judge's directions and discovery rulings. *See* Hr'g Tr., June 5, 2015.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

ROANNE L. MANN, United States Magistrate Judge.

For more than a year, this wage-and-hour case has been languishing, due in large part to the obfuscation and unnecessary delay caused by defendants Hamza Express Food Corp. ("Hamza Express"), Almontazer Fadel ("Fadel"), and Noaman Nashall ("Nashall") (collectively, "defendants").[1] In a Memorandum and Order dated September 25, 2014 (the "9/25/14 M & O"), this Court directed defendants to, *inter alia*, substantively respond to plaintiffs' discovery requests or risk the imposition of sanctions. *See* Memorandum and Order (Sept. 25, 2014) ("9/25/14 M & O"), DE #52. Currently before this Court is plaintiff's motion to strike defendants' answer and render a default judgment against them for violating the 9/25/14 M & O. *See* Letter Motion to Strike (Oct. 9, 2014) ("Pl. Mot.") at 9, DE #53. Defendants oppose plaintiff's motion. *See* Response in Opposition (Oct. 14, 2014) ("Def. Opp."), DE #54.

For the reasons stated herein, this Court recommends that the District Court grant plaintiff's motion to strike defendants' answer and enter a default judgment against Fadel and Hamza Express, pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure ("FRCP").

## *BACKGROUND*

### I. A Near–Default and Overdue Discovery Responses

Plaintiff filed this lawsuit on January 8, 2014, asserting federal and state law wage-and-hour claims arising out of plaintiff's employment with defendants as a "deli man" and his eventual termination from that position. *See generally* Complaint (Jan. 8, 2014) ("Compl."), DE #1. Procedural irregularities occurred early in this case. After defendants failed to make a timely appearance or to respond to the complaint, plaintiff, on March 5, 2014, requested that the Clerk of the Court enter defaults against all defendants. *See* Request for Certificate of Default (Mar. 5, 2014), DE #7. The very next day, the individual defendants, through their then-counsel Stephen Hans ("Hans"), belatedly filed an answer. *See* Answer (Mar. 6, 2014), DE #8. The Court accepted the individual defendants' belated answer, *see* Scheduling Order (Mar. 7, 2014), DE #9, and plaintiff thereafter requested a certificate of default against only the corporate defendant, which appeared still to be unrepresented, *see* Request for Certificate of Default (Mar. 26, 2014), DE #10. However, Hans subsequently filed a notice of appearance on behalf of all three defendants, and, with leave of the Court, an amended answer on their behalf. *See* Notice of Appearance (Mar. 31, 2014), DE #16; Endorsed Order (Mar. 27, 2014), DE #14; Amended Answer (Mar. 31, 2014) ("Am. Answer"), DE #17. The Court thereafter held an initial conference on April 24, 2014, and set fact discovery deadlines for this litigation. *See* Minute Entry (Apr. 24, 2014), DE #18.

---

1. On August 22, 2014, plaintiff Muhammed Chowdhury ("plaintiff") voluntarily dismissed defendant Nashall from this action. *See* Notice of Voluntary Dismissal (Aug. 22, 2014), Electronic Case Filing ("ECF") Docket Entry ("DE") #38. In connection with the procedural history of the case prior to August 22, 2014, references in this opinion to "defendants" include Nashall.

The initial hiccups in this case gave way to even greater problems during the discovery phase. On June 30, 2014, plaintiff moved to compel overdue responses to plaintiff's discovery demands, complaining that defendants had done nothing to move the case forward in months. *See* Letter Motion for Discovery (June 30, 2014), DE # 23. The following day, the Court, noting that defendants had offered no valid excuse for failing to make the past-due responses, directed defendants, "on pain of sanctions, to respond to all outstanding discovery demands by 10:00 a.m. on July 7, 2014." Order (July 1, 2014) ("7/1/14 Order"), DE # 24.

That same day, Hans moved to be relieved as counsel for defendants, citing difficulties communicating with his clients and their unwillingness to cooperate with counsel in moving the case forward. *See* First Motion to Withdraw (July 1, 2014), DE # 25. Separately, Hans moved for an adjournment of the July 7, 2014 response deadline that the 7/1/14 Order had imposed on defendants. *See* First Motion to Stay (July 1, 2014), DE # 26. This Court immediately denied the latter motion and directed defense counsel to provide defendants with copies of both the 7/1/14 Order and the order denying the motion to adjourn the response deadline. *See* Endorsed Order (July 1, 2014), DE # 27.

In a status report filed two days later, Hans confirmed that, in addition to serving his motion to be relieved on defendants via process server, he had provided defendants with copies of plaintiff's discovery demands, and stated that his firm had attempted to convey to defendants, through multiple media, "the importance of responding to the discovery demands and the seriousness of their lack of cooperation." Status Report (July 3, 2014) ("7/3/14 Status Report"), DE # 28. Plaintiff thereafter filed a letter opposing Hans' request to withdraw from the case, arguing that plaintiff was entitled to have defendants' answer stricken under Rule 37 of the FRCP, and that plaintiff should be permitted to serve Hans with moving papers seeking such relief, rather than having to serve "phantom defendants." *See* Response in Opposition (July 3, 2014) at 4, DE # 29. In his letter, plaintiff apportioned part of the blame for defendants' failure to comply with their discovery obligations on defense counsel, *see id.*, prompting in part another letter from Hans seeking to vindicate his law firm's efforts, *see* Letter (July 7, 2014), DE # 30. Hans therein stated that his firm was unable to communicate with his clients by any means, and that he believed his clients would remain unresponsive going forward and evade efforts to contact them. *See id.* at 2.

On July 9, 2014, the Honorable Jack B. Weinstein, the District Judge assigned to the case, held a hearing on Hans' motion to be relieved. None of the defendants appeared at the hearing, despite Hans' attempts to contact his clients and Judge Weinstein's explicit directive that "a knowledgeable person" for defendants attend the hearing with counsel. *See* Transcript of July 9, 2014 Hearing ("7/9/14 Transcript") at 2–4; Docket Entry Setting Hearing (June 24, 2014). Hans reiterated to the Court that he was seeking to be relieved because of his inability to communicate with his clients and their lack of cooperation. *See* 7/9/14 Transcript at 4. The District Court granted Hans' motion, over plaintiff's objection. *See id.* at 4–5; Minute Order (July 9, 2014), DE # 33.

■ Hans' prediction at the motion hearing that his clients would remain unresponsive proved correct. Shortly after that hearing, plaintiff filed yet another letter motion, served on defendants at their place of business, stating that defendants had failed to comply with the Court's 7/1/14 Order, in that they had provided no discovery responses despite the court imposed July 7th deadline. *See* Letter Motion (July 10, 2014) ("7/10/14 Mot."), DE # 32. On the basis of that failure, plaintiff requested leave to move to strike defendants' answer. *See id.* Defendants did not respond to the motion. After plaintiff filed a follow-up letter requesting judicial intervention, *see* Letter (Aug. 6, 2014), DE # 34, this Court issued an order to show cause, *see* Order to Show Cause (Aug. 14, 2014) ("8/14/14 OTSC") at 2, DE # 35. Noting that defendants had apparently "abandoned their defense of this action[,]" the Court directed defendants to show cause, in writing, "why their answer should not be stricken for violating their discovery obli-

gations and court orders, and, as to defendant [Hamza Express], for failing to retain counsel to represent it."[2] 8/14/14 OTSC.

## II. A Change of Counsel and Continued Discovery Issues

On August 22, 2014,[3] defendants, through newly retained counsel, Morris Fateha ("Fateha"), filed a response to the Court's 8/14/14 OTSC, claiming for the first time that plaintiff told defendants that he had instructed his attorney to dismiss the lawsuit against them. *See* Response to Order Show Cause (Aug. 22, 2014), DE # 37. Defendants also requested an extension of fact discovery and the deadline for amending the pleadings. *See id.* at 2. In a letter opposing defendants' request, plaintiff disputed defendants' version of events. *See* Letter (Sept. 3, 2014) ("Pl. 9/3/14 Let."), DE # 41. According to plaintiff's counsel, Michael Kimm ("Kimm"), Fateha informed Kimm that plaintiff had been paid $5,000 to dismiss the lawsuit. *See id.* at 2. Kimm strongly denied Fateha's allegations of payment and renewed his request for an order "striking the answer[,]" *see id.* at 3, correctly noting that defendants' August 22, 2014 filing did not address the substance of the 8/14/14 OTSC—namely, defendants' failure to comply with their discovery obligations, *see id.* at 2.

Having reviewed both parties' submissions, the Court directed defendants to substantively respond to the 8/14/14 OTSC. *See* Electronic Order (docketed Sept. 4, 2014). A few days later, on September 8, 2014, this Court ordered defendants, by September 10, 2014, to respond to plaintiff's discovery demands, which had been served almost four months earlier. *See* Electronic Order (docketed Sept. 8, 2014).

That same day, Fateha informed the Court that he would not be able to meet the September 10, 2014 deadline, as Fateha was never served with or provided copies of plaintiff's discovery demands. *See* Motion for Extension of Time (Sept. 8, 2014) ("9/8/14 Mot.") at 2, DE # 42; *but see* 7/3/14 Status Report (Hans provided copies to defendants). Fateha also claimed that he would need additional time due to the fact that defendant Fadel would be in Yemen until January 2015. *See* 9/8/14 Mot. at 1. Plaintiff "strenuously object[ed] to any further extension[.]" *See* Response in Opposition (Sept. 9, 2014) at 3–4, DE # 43.

On September 9, 2014, the Court held a telephone conference to discuss defendants' request for additional time to respond to plaintiff's discovery demands. *See* Minute Entry (Sept. 9, 2014) ("9/9/14 Minute Entry"), DE # 44. During the conference, Fateha admitted that he had made no efforts to obtain copies of plaintiff's discovery requests, despite being made aware by the 8/14/14 OTSC that defendants' responses were long overdue. *See* 9/9/14 Tr. at 10. Fateha also conceded that Fadel had no intention of appearing at a court conference scheduled for two days later—a conference at which Fadel had been directed by this Court to personally appear. *See id.* at 13; Order (Aug. 22, 2014), DE # 39 ("The proceeding must be attended by . . . defendants Fadel and Nashall.").[4] Towards the end of the telephone conference, the Court warned Fateha that it "expect[ed] 100 percent compliance with the defendants' discovery obligations and with court orders." *See* 9/9/14 Tr. at 21. Defendants were directed to serve "substantive responses" by September 15, 2014. *See* 9/9/14 Minute Entry at 2.

Following the telephone conference, plaintiff provided defendants with additional copies of the discovery requests, *see* Plaintiff's Interrogatory Requests (May 14, 2014) ("Pl. Interr. Requests"), DE # 51 at 4–7; Plaintiff's Document Requests (May 14, 2014) ("Pl. Doc. Requests"), DE # 51 at 8–13; and defendants thereafter finally served responses,

---

2. Entities, unlike natural persons, are not permitted to proceed *pro se* in federal court. *See, e.g., Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305 (2d Cir.1991).

3. Although the response deadline was originally set as August 20, 2014, the Court *sua sponte* extended the deadline to August 22, 2014, in light of a typographical error in the 8/14/14 OTSC that denoted "August 20, 2015" as the response deadline. *See* 8/14/14 OTSC; Order (Aug. 19, 2014), DE # 36.

4. The in-person conference was subsequently adjourned *sine die. See* 9/9/14 Minute Entry.

*see* Response to Plaintiff's Request for Production of Documents ("Def. Doc. Resp."), DE # 49–2; Response to Plaintiff's Interrogatories (Sept. 13, 2014) ("Def. Interr. Resp."), DE # 49–1.

These first discovery responses—which merely repeated identical cookie-cutter objections to each request—were plainly devoid of any substance. *See generally* Def. Doc. Resp.; Def. Interr. Resp. Furthermore, in addition to the fact that defendants violated Rule 33(b)(5) of the FRCP by failing to sign the interrogatory responses, defendants claimed, as to each interrogatory, that the requested information "[wa]s not within the knowledge of defendants." *See generally* Def. Interr. Resp. That assertion strained credulity, since plaintiff was seeking information as banal as a list of the defendant deli's employees. *See, e.g., id.* at 5. Further compounding the problem, defendants' response to each document request claimed that "no such documents [we]re in defendants' custody at this time." *See generally* Def. Doc. Resp.; *but see* Fed.R.Civ.P. 34(a)(1) (party must provide documentation within his or her *"possession,* custody or *control"*) (emphasis added).

Having received these deficient responses, plaintiff, on September 18, 2014, moved to disqualify Fateha as defendants' attorney. *See* Letter (Sept. 18, 2014) at 1, DE # 49. In that same application, plaintiff renewed his request to strike defendants' answer. *See id.* at 5.

## III. The 9/25/14 M & O and Defendants' Response Thereto

In its 9/25/14 M & O, the Court declined to disqualify Fateha, *see* 9/25/14 M & O at 1, but did devote several pages of its opinion to summarizing defendants' persistent derelictions and woefully inadequate discovery responses, *see generally id.* In particular, the Court found that defendants had asserted untimely "boilerplate and baseless objec-

tions," *see id.* at 3, and had neglected to comply with the Court's previous order that they provide "substantive responses," *see id.* at 4 (noting that "defendants have provided no information whatsoever in response to plaintiff's interrogatories, and, at most, a couple of documents in response to plaintiff's document demands").

As a result of defendants' misconduct, the Court directed defendants "to produce the demanded information and documents by close of business on October 2, 2014," and precluded defendants from "interpos[ing] any objections to plaintiff's interrogatories and/or document demands." *See* 9/25/14 M & O at 5. The 9/25/14 M & O also required defendants to "serve and file a detailed document, signed and sworn by each defendant, that responds to each interrogatory and document demand individually." *See id.* The Court further directed defendants to produce, by the same date, "all responsive documents (within the meaning of Fed.R.Civ.P. 34(a)(1)(A)) in their custody, possession, or control[.]" *See* 9/25/14 M & O at 5. The Court concluded by warning defendants that:

> [T]he Court will tolerate no further violations by defendants, and will not hesitate to impose sanctions and recommend that defendants' answer be stricken in the event this *final warning* does not induce them to abandon their campaign of delay and obfuscation.

*Id.* (emphasis in original).

On October 2, 2014, defendants provided plaintiff with amended discovery responses and produced a limited set of documents. *See* Response to Plaintiff's Document Requests ("Def. Am. Doc. Resp."), DE # 53–1 at 1–10; Response to Plaintiff's Interrogatories ("Def. Am. Interr. Resp."), DE # 53–1 at 11–20. One week later, plaintiff filed the instant motion, renewing, once again, his request to strike defendants' answer. *See generally* Pl. Mot.[5] Defendants oppose plaintiff's

---

5. Prior to this latest request to strike defendants' answer, defendants filed a motion to amend their answer yet again, *see* Motion to Amend (Sept. 11, 2014), DE # 47, a motion to which plaintiff did not respond. In seeking to strike defendants' answer two weeks later, plaintiff made no distinction between the operative answer and the one currently proposed by defendants. *See gen-*

*erally* Pl. Mot. In any event, because this Court recommends striking defendants' operative answer, *see* Am. Answer, there is no need to address at this time whether it would be appropriate to allow defendants, at this late stage, to amend their answer a second time, as their motion to amend would be rendered moot in the

motion, claiming that they have "complied with all court orders and have fully responded" to the discovery requests. *See* Def. Opp. at 2. This Court concludes otherwise.

### DISCUSSION

■■■ If a party disobeys a court order to provide discovery, the court may issue further just orders, including "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party[.]" Fed.R.Civ.P. 37(b)(2)(A). "Imposing sanctions pursuant to Rule 37 'is within the discretion of the district court ....'" *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir.2012) (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir.1988)). Factors guiding the district court's exercise of discretion include the following: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *World Wide Polymers*, 694 F.3d at 159 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir.2009)) (internal quotation marks omitted). However, these factors are non-exclusive, and the district court has wide discretion in issuing "just" sanctions under Rule 37. *See World Wide Polymers*, 694 F.3d at 159 (citing *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir.2010)).

In essence, plaintiff's motion requires the Court to answer two questions: (1) whether defendants violated the 9/25/14 M & O; and (2) if so, what is the appropriate remedy for those violations?

### I. Did Defendants Violate the 9/25/14 M & O?

In his motion, plaintiff presents a litany of challenges as to the adequacy of defendants' responses to his discovery requests. *See generally* Pl. Mot. As detailed below, although not all of plaintiff's arguments are

event this Report and Recommendation is

persuasive, the Court concludes that defendants violated its 9/25/14 M & O in several material respects.

### A. Defendants' Signatures

■■■ First and foremost, the 9/25/14 M & O required defendants to submit "a detailed document, signed and sworn by *each defendant,* that responds to each interrogatory and document demand individually." *See* 9/25/14 M & O at 5 (emphasis added). In a half-hearted attempt to comply with the 9/25/14 M & O, defendants' discovery responses include a certification by Hizam Saleh ("Saleh"), "manager" of defendant Hamza Express, but the certification is inadequate. *See* Certification of Hizam Saleh (Sept. 30, 2014) ("Saleh Cert."), DE # 53–1 at 20. First, there is no certification by defendant Fadel, even though "each defendant" was required to attest to the responses. While Fateha had previously informed the Court that Fadel was in Yemen for the remainder of 2014, *see supra* p. 78, Fateha never sought an adjournment of the certification on this basis, nor has he supplemented defendants' response since Fadel's return from Yemen. Indeed, Fateha's opposition to plaintiff's motion to strike wholly ignores Fadel's failure to sign the discovery responses. Second, Saleh only swears to the accuracy of defendants' interrogatory responses. *See* Saleh Cert. While Saleh notes that he has reviewed the documents being provided to plaintiff, he does not state that he has reviewed the written document responses. *See id.*

Therefore, defendants have violated that aspect of the 9/25/14 M & O.

### B. Substantive Responses

#### 1. Interrogatory No. 10

■■■ Interrogatory No. 10 states in full:

Set forth in detail all methods by which defendants track employee time worked, such as (by way of example) time-sheets, sign-in logs, time cards, hand scanners, etc. by which defendants maintain time-keeping/payroll records for their employees, identifying each person with knowl-

adopted by the District Court.

edge of these facts and each document related to these facts.

Pl. Interr. Requests, DE #51 at 6. Defendants responded to Interrogatory 10 in the following manner:

> The Defendants do not track employees' time worked by time sheets, sign-in logs, hand scanners, or in any other documentary manner. Annexed hereto is a reconstructed time-sheet of all employees' hours worked based upon the Defendants' recollection.

Def. Am. Interr. Resp., DE #53–1 at 17.

Defendants' response is deficient in several respects. While defendants deny that they track employees' time in a documentary manner, they do not identify the method that they do use to track time, let alone set forth that information in detail. More importantly, defendants do not identify any person "with knowledge of these facts." In addition, defendants claim to provide a reconstructed time-sheet of "all" employees "based upon the Defendants' recollection," but the reconstructed time-sheet purportedly includes only three of eight identified employees of Hamza Express.[6]

For the foregoing reasons, defendants failed to fully respond to Interrogatory No. 10 and have thus violated the 9/25/14 M & O.

## 2. Interrogatory No. 14

Interrogatory No. 14 requests that defendants "[d]escribe in detail all facts that support each and every Affirmative Defense in defendants' answer." See Pl. Interr. Requests, DE #51 at 7. Defendants' entire response reads as follows:

> All facts supporting the Defendants' affirmative defenses were obtained from conversations with the Defendants, conversations with Hizam Saleh, and from the documents provided in response to the Plaintiff's Document Request.

Def. Am. Interr. Resp., DE #53–1 at 18.

To be sure, the scope of Interrogatory No. 14 is sweeping. That said, defendants do not

even attempt to summarize any of the facts that support their affirmative defenses. They merely identify, in general terms, the source of those facts. (Moreover, in regards to purported conversations with "defendants," it is unclear whom the response is referencing, as the only individual defendant left in the case is Fadel.) By failing to cite even one fact in support of one affirmative defense, defendants cannot be said to have substantively responded in good faith to this discovery request. Therefore, this response violates the Court's 9/25/14 M & O.

## 3. Interrogatory No. 15

Interrogatory No. 15 requests that defendants "[i]dentify all sales tax records, income tax records, and sales/revenue journals[,] including cash journals for the past 6 years." See Pl. Interr. Requests, DE #51 at 7. In response, defendants state in full: "All relevant parts of the income tax records are annexed hereto." Def. Am. Interr. Resp., DE #53–1 at 18.

Plaintiff contends, and defendants do not dispute, that defendants produced only the first page of the Hamza Express corporate income tax returns from the years 2012 and 2013. See Pl. Mot. at 6–7. Defendants argue that the other pages of the corporate income tax returns are irrelevant, but state that they would be willing to produce the entire documents once a protective order is in place. See Def. Opp. at 2. Nevertheless, since plaintiffs' reply does not address defendants' offer to produce the complete returns once the parties agree to a protective order, see generally Letter in Reply (Oct. 21, 2014), DE #55, the Court, out of an abundance of caution, will not deem defendants' failure to produce the other pages of the 2012 and 2013 income tax returns to violate the 9/25/14 M & O.[7]

On the other hand, defendants have not complied in good faith with plaintiff's demand for other financial records. Regardless of

---

6. Although plaintiff's filing fails to provide a copy of the reconstructed time-sheet, defendants do not dispute plaintiff's characterization of that document. See generally Def. Opp.

7. Plaintiff also complains that he received income tax returns for only two of the requested six years, but it is unclear from the record whether Hamza had been operating for the entire six-year period plaintiff requests.

whether defendants failed to substantively respond to Interrogatory No. 15 with respect to the income tax records, it is undisputed that defendant wholly ignored plaintiff's request that they identify sales tax records and sales/revenue journals, including cash journals, which plaintiff contends were maintained at the back of the store. *See* Pl. Mot. at 6. Defendants' failure to address those documents in response to Interrogatory No. 15 is yet another material violation of the 9/25/14 M & O.

### C. Summary of Violations

In conclusion, defendants have violated several material aspects of the Court's 9/25/14 M & O, in that defendants ignored the signature requirement and failed to substantively respond in good faith to Interrogatory Nos. 10, 14, and 15.[8]

### II. Should Defendants Be Sanctioned for Violating the 9/25/15 M & O?

As noted above, *see supra* p. 80, the non-exclusive factors guiding the district court's exercise of discretion in imposing sanctions under Rule 37(b) include the following: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *World Wide Polymers,* 694 F.3d at 159 (quoting *Agiwal,* 555 F.3d at 302) (internal quotation marks omitted).

■■■ The entry of a default judgment as a sanction is appropriate in the face of willful misconduct, "to achieve the purpose of Rule 37 as a credible deterrent 'rather than a paper tiger.'" *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir.1988) (quoting *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1064 (2d Cir.1979)); *see also id.* at 70–72 (upholding judgment entered under Rule 37 in plaintiff's favor on copyright claims where defendants acted in bad faith and refused to comply with discovery orders); *cf. Bussa v. MTA N.Y.C. Transit,* No. 10–CV–2525 (JBW)(MDG), 2011 WL 7301567, at *3–5 (E.D.N.Y. Nov. 1, 2011) (recommending that case be dismissed under Rule 37, due to *pro se* plaintiff's failure to follow court orders and participate in discovery), *adopted,* 2012 WL 486730 (E.D.N.Y. Feb. 14, 2012) (Weinstein, J.). While dispositive relief is a severe sanction that should be granted only sparingly, *see World Wide Polymers,* 694 F.3d at 159, a "continuing saga of dilatory conduct" will satisfy the threshold for entering a default judgment under Rule 37, *see U.S. Freight Co. v. Penn Cent. Transp. Co.,* 716 F.2d 954, 955 (2d Cir.1983). "[H]ere, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Sieck v. Russo,* 869 F.2d 131, 134 (2d Cir.1989) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)).

---

8. In addition to the violations discussed above, plaintiff has alleged that defendants failed to substantively respond to other aspects of his discovery demands. But after a careful review, the Court has determined that those allegedly inadequate responses do not constitute violations of the 9/25/14 M & O. With respect to Interrogatory No. 1, plaintiff now seeks more information than what was actually requested. *Compare* Pl. Mot. at 4 (asserting that defendants failed to provide, among other things, the "context" of each of the listed employees) *with* Pl. Interr. Requests, DE # 51 at 4. In addition, plaintiff's allegation that defendants failed to produce documents responsive to Document Request No. 8 (seeking W–2 forms and other government tax documents re-

lating to plaintiff) may be true but is not inconsistent with the allegations in plaintiff's complaint. *Compare* Pl. Mot. at 7 *with* Compl. ¶ 10 (plaintiff was not issued W–2 forms). As for Document Request No. 9, it is arguably ambiguous as to whether said request required production of the corporate tax returns, as opposed to Fadel's individual returns. *See* Pl. Doc. Requests, DE # 51 at 9. Finally, Nashall, who is no longer a defendant in this case and has apparently not been subpoenaed as a nonparty witness, is under no obligation to produce his personal income tax returns, and the remaining defendants will not be faulted for his failure to do so. *See* Pl. Mot. at 7.

As explained below, measured against the above standard, defendants' course of conduct warrants striking their amended answer and entering a default judgment against them.

## A. The Willfulness of the Noncompliant Party or the Reason for Noncompliance

In opposition to plaintiff's motion, defendants primarily object to plaintiff's characterization of their document production. *See generally* Def. Opp. Indeed, save for one conclusory aside, *see id.* at 2, defendants do not respond to any of plaintiff's complaints concerning inadequate interrogatory responses. Nor do defendants acknowledge or address their failure to comply with the signature requirement of the 9/25/14 M & O. In short, defendants make no attempt to justify those blatant insufficiencies. Moreover, defendants' willfulness and bad faith in disregarding this Court's 9/25/14 M & O are evident from their history of violations and their disingenuous claim in their opposition papers that, "[t]o date, Defendants have complied with all court orders...." *See* Def. Opp. at 2; *In re Tartaglione,* No. 04 B 22783(ASH), 2008 WL 336844, at *7 (S.D.N.Y. Feb. 5, 2008) (finding willfulness where disobedient party "repeatedly failed to produce critical documents or respond to proper document requests and interrogatories, and there was reason to doubt his credibility and forthrightness"); *see also Handwerker v. AT & T Corp.,* 211 F.R.D. 203, 209 (S.D.N.Y.2002) ("[A] party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad fault or fault.") (internal quotations and citation omitted). Therefore, this favor weighs in favor of striking defendants' amended answer.

## B. The Efficacy of Lesser Sanctions

■ The Court has previously sanctioned defendants for conduct related to these same discovery requests. *See* 9/25/14 M & O at 5

(precluding defendants from interposing "any objections to plaintiff's interrogatories and/or document demands"); *see also id.* at 3 (defendants' responses included "a series of boilerplate and baseless objections").[9] Despite this prior sanction, defendants nevertheless did not fully satisfy (or even substantially satisfy) their obligations in their court-ordered responses to plaintiff's discovery requests. In any event, "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *S. New England Tele. Co.,* 624 F.3d at 148 (citing *John B. Hull, Inc.,* 845 F.2d at 1176–77) (2d Cir.1988)). Thus, this factor also weighs in favor of striking defendants' amended answer.

## C. The Duration of the Period of Noncompliance

The defendants' violation of the 9/25/14 M & O is just the latest in a series of derelictions by defendants during the course of discovery. Plaintiff served his discovery requests in May 2014, but was constrained to move to compel discovery responses in June 2014, after defendants neglected to respond. On July 1, 2014, this Court directed defendants to provide responses to those requests no later than July 7, 2014. Despite their then defense counsel's efforts to secure defendants' compliance with their discovery obligations and court orders, defendants failed to comply with this Court's July 1, 2014 order,[10] resulting in an order to show cause in August 2014 why their answer should not be stricken. While newly retained counsel for defendants filed a letter on the deadline for responding to the order to show cause, the letter did not substantively respond to the subject matter of the order to show cause—i.e., defendants' failure to respond to discovery responses. Thus, the Court found it necessary to direct defendants, again, to respond to the order to show cause. Finally,

---

**9.** Notwithstanding the Court's preclusion of their untimely, baseless objections, defendants in their amended discovery responses still set forth numerous "general" objections. *See* Def. Am. Doc. Resp., DE # 53–1 at 3–5; Def. Am. Interr. Resp., DE # 53–1 at 13–15.

**10.** Defendants not only failed to comply with this Court's July 1, 2014 order, but they also ignored Judge Weinstein's directive that a "a knowledgeable person" appear on behalf of defendants at the July 9th hearing on Hans' motion to be relieved as counsel.

defendants served responses to plaintiff's discovery responses, four months after they were initially served. Defendants' discovery responses were, however, devoid of substance and contained repetitive, baseless objections, prompting the Court to issue the 9/25/14 M & O mandating amended discovery responses. As explained above, defendants then served amended discovery responses that violated material aspects of the 9/25/14 M & O. Moreover, in the four months since plaintiff challenged the sufficiency and bona fides of defendants' amended discovery responses, defendants apparently have not further revised or supplemented those responses, or otherwise attempted to remedy their violations. Given the protracted history of plaintiff's and the Court's efforts to secure defendants' compliance with their discovery obligations, this factor weighs in favor of striking defendants' amended answer.

### D. Whether the Noncompliant Party Had Been Warned of the Consequences of Noncompliance

Since plaintiff first moved to compel defendants' discovery responses in June 2014, defendants received three warnings from this Court threatening sanctions for their misconduct in this action. *See* 7/1/14 Order (defendants must respond to outstanding discovery demands "on pain of sanctions"); 8/14/14 OTSC at 2; 9/25/14 M & O at 5; *see also* Endorsed Order (Sept. 11, 2014), DE # 48 ("Given the history of the defendants' derelictions, the defense is warned that the Court will tolerate no further violations of and/or tardy responses to court orders."); 9/9/14 Tr. at 21. Two of the three warnings specifically highlighted the possibility that defendants' continuing failure to comply with court orders and/or fulfill their discovery obligations could result in their pleading being stricken. *See* 8/14/14 OTSC; 9/25/14 M & O. Indeed, in the 9/25/14 M & O, the Court gave a "final warning" to defendants that it would "not hesitate to impose sanctions and recommend

that defendants' answer be stricken" if defendants did not "abandon their campaign of delay and obfuscation." *See* 9/25/14 M & O at 5. Thus, this fourth factor supports striking defendants' amended answer.

### E. Balancing of Factors

■ Each factor weighs in support of striking defendants' pleading and entering a default judgment against defendants. Not only did defendants violate the 9/25/14 M & O, but they did so in several material respects and in the face of explicit warnings from the Court. To be sure, defendants' violations do not involve the more typical Rule 37 scenario of a party's failure to provide any response whatsoever to outstanding discovery demands. Here, in contrast, defendants purport to respond, but their discovery responses ignore entire aspects of plaintiff's demands—aspects that are material to the issues in this case [11]—and thereby render their responses of little, if any, utility. Simply because defendants have gone through the motions of serving a response does not mean that their response is substantive, made in good faith, or constitutes substantial compliance with the Court's most recent directive to satisfy their discovery obligations.

Moreover, given that defendants' inexcusable disregard of the 9/25/14 M & O is part of a continuing saga of dilatory conduct, the Court is not inclined to allow defendants yet another bite at the apple. *See Integrity Elecs., Inc. v. Garden State Distrib., Inc.,* No. 09 Civ. 2367(ILG)(CLP), 2012 WL 1041349, at *3 (E.D.N.Y. Mar. 28, 2012) (finding that defendants' repeated failure to comply with magistrate judge's discovery orders, and their deficient discovery responses, warranted the striking of defendants' answer and counterclaims and a grant of default judgment against them, pursuant to Rule 37).

---

11. For example, defendants' failure to provide the relevant sales/revenue journals information severely prejudices plaintiff in his attempt to demonstrate that defendants realized sufficient revenue to satisfy the $500,000 threshold for stating a claim under FLSA. Indeed, in their opposition to plaintiff's motion to strike, defen-

dants purport to move to dismiss on the basis that plaintiff cannot make such a showing. *See* Def. Opp. at 3. Similarly, defendants' omissions relating to how time records are kept or who has knowledge of that information limits, for obvious reasons, plaintiff's ability to prosecute his wage-and-hour claims.

**CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that defendants' amended answer be stricken and default judgments entered against Fadel and Hamza Express.

Any objections to the recommendations contained herein must be filed with Judge Weinstein on or before March 16, 2015. Failure to file objections in a timely manner may waive a right to appeal the District Court order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989) (*per curiam*).

**SO ORDERED.**

**Dated: February 26, 2015.**